```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                            CHARLESTON

JAMES O. BURGESS, JR.,

        Plaintiff,

v.                                         CASE NO. 2:09-cv-01184

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
```

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, James O. Burgess, Jr. (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on March 27, 2007, alleging disability as of February 15, 2007, due to an artificial left leg, missing fingers of the left hand, pain in the arms, high blood pressure, acid reflux and significant hearing loss. (Tr. at 95-98, 99-104, 129, 159.)  The claims were denied initially and

upon reconsideration. (Tr. at 52-55.) On September 21, 2007, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 71-72.) The hearing was held on June 10, 2008, before the Honorable Theodore Burock. (Tr. at 25-51.) By decision dated October 31, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 16-24.) The ALJ's decision became the final decision of the Commissioner on September 22, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) On October 29, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is

whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574

(4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of below-the-knee amputation, carpal tunnel syndrome, rheumatoid arthritis/osteoarthritis and left hand impairment. (Tr. at 18.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19.) The ALJ then found that Claimant has a residual functional capacity for sedentary work, reduced by nonexertional limitations. (Tr. at 20.) As a result, Claimant cannot return to his past relevant work. (Tr. at 23.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as surveillance system monitor and cashier, which exist in significant numbers in the national economy. (Tr. at 24.) On this basis, benefits were denied. (Tr. at 24.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less

> than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-eight years old at the time of the administrative hearing. (Tr. at 30.) Claimant graduated from high school. (Tr. at 32.) In the past, he worked as an auto mechanic. (Tr. at 45.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

On April 26, 2007, Kip Beard, M.D. examined Claimant at the request of the State disability determination service. Claimant reported a motorcycle accident in 1975, where he fractured his

femur and crushed his left lower leg from the knee down. In 1987, he had a left below-the-knee amputation. Claimant injured his left hand in 1990 on a log splitter. He smashed the fingers of his left hand and had several surgeries. He lost his fifth finger and his fourth finger is contracted down. (Tr. at 181.) Claimant also reported pain in both arms from the elbows down and numbness in both hands. Claimant had no recent EMG or nerve conduction studies. Claimant also reported a history of right hip pain. (Tr. at 182.)

Dr. Beard noted that upon examination, Claimant's "right hand is normal without pain, tenderness redness, warmth, or swelling. There is normal motion without atrophy. The claimant is able to write with his dominant hand and pick a coin up with either hand without apparent difficulty. Grip strength measures 38, 36, and 32 kg of force on the right and 26, 26 and 3 kg of force on the left." (Tr. at 184.) Claimant had a positive Tinel sign at both wrists, worse on the right. (Tr. at 185.) Dr. Beard's impression was left below-the-knee amputation, left hand crush with amputation and residual flexion contracture, arm pain, right hip pain and possible carpal tunnel syndrome. (Tr. at 185.) Dr. Beard observed that Claimant did mention "some arm pain with numbness and tingling. Tinel tested seemed positive, worse on the right side. There was no intrinsic hand atrophy aside from that related to the left hand injury. There was no sensory loss, and manipulation was preserved

on the right." (Tr. at 185-86.)

On May 16, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant was limited to light work, with an inability to climb ladders, ropes and scaffolds and crawl, an occasional ability to climb ramps and stairs, balance, stoop, kneel, crouch and crawl, an unlimited ability to reach in all direction, finger and feel, a limited ability to handle, and a need to avoid concentrated exposure to extreme cold, vibration and hazards. (Tr. at 189-94.) In evaluating Claimant's manipulative limitations, the source notes that there is a "moderate restriction of left hand grip but can perform fine manipulation. [N]ormal right hand." (Tr. at 192.)

The record includes treatment notes from Clendenin Health Center dated August 23, 2006, through June 4, 2007. (Tr. at 198-212.) On August 23, 2006, Claimant complained of fatigue for three months. He was diagnosed with hypertension, hyperlipidemia and fatigue. He was prescribed Prilosec, Zocor, Diovan and Norvasc and referred for endoscopy. (Tr. at 209.) On February 27, 2007, Claimant complained of flu symptoms. Claimant's hypertension was stable. (Tr. at 205-06.)

On April 20, 2007, K.A. Lovin, PAC completed a Routine Abstract Physical for the State of West Virginia, Disability Determination Section. Ms. Lovin noted that Claimant had decreased grip strength on the left and no limits on the right. Claimant

could make a fist, button clothing, pick up coins and tie a shoe string. (Tr. at 201.)  Claimant had a sensory deficit to light touch on the right hand.  (Tr. at 202.)  Ms. Lovin's diagnoses included hypertension, hypercholesterolemia, Barrett's esophagus, hyperglycemia, left below-the-knee amputation, left partial digital amputation and right shoulder pain.  (Tr. at 203.)  Ms. Lovin opined that Claimant had limited gait, poor endurance and difficulty using his left hand.  (Tr. at 204.)

On June 4, 2007, Ms. Lovin completed a West Virginia Department of Health and Human Resources Medical Review Team (MRT), General Physical (Adults).  Claimant complained of right arm pain, right leg pain and left hand pain with gripping.  (Tr. at 215.) Ms. Lovin noted that Claimant had Heberden's nodes in the right PIP joints.  She noted that Claimant had right arm pain that radiated and burned and was worse with external rotation.  (Tr. at 215.) Ms. Lovin opined that Claimant was unable to work full time as a mechanic because he did not have the necessary fine motor skills or the ability to engage in prolonged standing and walking. (Tr. at 215.)  Ms. Lovin further stated that Claimant's mobility and fine and gross motor skills were significantly impaired.  (Tr. at 215.)

On August 22, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant was limited to light work, with an inability to climb ladders, ropes and scaffolds, balance, crawl and kneel, an

occasional ability to climb ramps and stairs, stoop and crouch, an unlimited ability to reach in all direction, finger and feel, a limited ability to handle, and a need to avoid concentrated exposure to extreme cold, vibration and hazards. (Tr. at 219-26.) In evaluating Claimant's manipulative limitations, the source notes that Claimant's left "hand amputation of [the] 5th [left] [f]inger including 5th [m]etacarpal, contracture of 4th finger will restrict C2 moderately. [Right] hand fine manipulation is normal." (Tr. at 222.)

The record includes additional treatment notes from Clendenin Health Center dated June 4, 2007, through April 20, 2008. (Tr. at 230-45.) On September 4, 2007, Claimant reported that his leg hurt, but he was generally stable. (Tr. at 239-40.) On January 4, 2008, Claimant reported doing okay, but there is mention of a right wrist problem. Claimant had positive Phalen's and Tinel's sign, though the note does not indicate if this in on the left, right or both. There is reference to a wrist splint on the right. Blood tests, including a Sedentary rate, Rheumatoid Arthritis Factor and Sedimentation Rate-Westergren were ordered. (Tr. at 243.) Claimant's ANA with reflex was negative at 31. His RH was 12.0 (with a reference interval of 0.0-13.9 IU/ml) and his Sedimentation Rate-Westergren was 4 (with a reference interval of 1-15 mm/hr). A note on the test results indicates that Claimant's RH should be rechecked in six months. (Tr. at 243.) On April 14, 2008,

Claimant returned for a check up and for medication refills. There is no mention of right upper extremity problems. The examination indicates that Claimant was generally stable. (Tr. at 235.)

On June 9, 2008, Ms. Lovin completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work, that he could stand and/or walk for two hours in an eight-hour workday, that he must periodically alternate sitting and standing to relieve pain, that he was limited in pushing and pulling in the upper and lower extremities, that he could occasionally climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, kneel and crouch, that Claimant was limited in his ability to feel and that Claimant had limitations related to hearing loss. (Tr. at 246-53.) Ms. Lovin mentions that Claimant has decreased ability in all ten fingers. (Tr. at 249.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in his residual functional capacity finding by failing to include any limitations in Claimant's right upper extremity due to carpal tunnel syndrome and arthritis. (Pl.'s Br. at 5-6.) In addition, the ALJ failed to include such limitations in his hypothetical question to the vocational expert. (Pl.'s Br. at 6-7.) Claimant asserts that the ALJ's failure to include manipulative limitations related to his right dominant hand and wrist is particularly

prejudicial given that the ALJ limited Claimant to sedentary work. Claimant points out that Social Security Ruling ("SSR") 96-9p provides that any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary work base. (Pl.'s Br. at 7; Pl.'s Reply at 1-4.)

In response, the Commissioner argues that the ALJ's residual functional capacity assessment fully accommodates Claimant's right hand limitations. (Def.'s Br. at 8-10.) The Commissioner further asserts that the vocational expert's response to the ALJ's hypothetical question provides substantial evidence to support the finding that Claimant can perform other work. (Def.'s Br. at 11-12.)

The court proposes that the presiding District Judge find that the ALJ's residual functional capacity finding is supported by substantial evidence and sufficiently accommodates any limitations in Claimant's right upper extremity due to carpal tunnel syndrome and arthritis. In his decision, the ALJ found that Claimant had the severe impairments of below-the-knee amputation, carpal tunnel syndrome, rheumatoid arthritis/osteoarthritis, and left hand impairment. (Tr. at 18.) In his residual functional capacity finding, the ALJ found that Claimant was "essentially limited to

sedentary[1]" work, further limited in

> pushing and/or pulling in the upper and lower extremities. He could occasionally climb, balance, and stoop. He could never kneel, crouch, and crawl. He could perform fine manipulations with the non-dominant left upper extremity only if he could see the work to be manipulated. He should avoid all exposure to extreme cold and extreme heat. He should avoid concentrated exposure to humidity. He can never perform reaching above shoulder level bilaterally. He should avoid all exposure to hazards such as dangerous equipment and unprotected heights. He could not work around a noisy work environment. He is limited to routine, repetitive tasks. He could not operate a motor vehicle as part of the job.

(Tr. at 20.)

At the administrative hearing, Claimant testified that carpal tunnel syndrome in his right hand causes numbness in the fingers of his right hand and causes his wrist to pop. Claimant testified that his wrist would pop upon picking up fifteen to twenty pounds. (Tr. at 36.) The ALJ limited Claimant to sedentary work with lifting limitations of twenty pounds occasionally and ten pounds frequently, along with additional standing, walking and sitting limitations. (Tr. at 20.) He included limitations in his residual functional capacity finding related to pushing and/or pulling with his upper extremities and reaching above shoulder level bilaterally. (Tr. at 20.) These limitations certainly account to some extent for Claimant's right carpal tunnel syndrome,

---

[1] The ALJ acknowledged in his decision, that at age 50, Claimant meets the Medical-Vocational Guidelines, Rule 201.14. 20 C.F.R., Pt. 404, Subpt. P., App. 2, Table No. 1, Rule 201.14 (2008).

particularly based on Claimant's testimony about how this condition limited him and in the absence of medical evidence such as an EMG or nerve conduction studies diagnosing carpal tunnel syndrome.

However, even more importantly, the ALJ posed a hypothetical to the vocational expert that referenced Ms. Lovin's Physical Residual Functional Capacity Assessment completed on June 9, 2008, that included limitations in fine manipulation. (Tr. at 46, 249.) The ALJ added the limitations from Ms. Lovin's Assessment to those already included in his first hypothetical question (those that ultimately made up his residual functional capacity finding), and the vocational expert identified the jobs of surveillance system monitor and cashier work. (Tr. at 47.)

Claimant's argument, that the record is "far from clear that [the vocational expert] considered [Claimant's] manipulative limitations of the right dominant hand," is unconvincing. (Pl.'s Br. at 7, Pl.'s Reply at 3-4.) While Claimant's current counsel did not represent Claimant at the administrative hearing and does not have the benefit of knowing the contents of the off the record conversation that occurred before the ALJ posed the hypothetical question including Ms. Lovin's Assessment, the ALJ clearly states at the administrative hearing on the record that the vocational expert reviewed the Assessment completed by Ms. Lovin while off the record. The ALJ then asked the vocational expert to assume limitations as described in that document, along with the original

13

limitations provided in the first hypothetical question. (Tr. at 46.) The vocational expert identified the jobs of surveillance system monitor and cashier. There is no evidence that the vocational expert was not aware of all the limitations contained in Ms. Lovin's Assessment, including those related to fine manipulation or her comment about limitations in all fingers. In fact, as noted above, the testimony at the administrative hearing indicates the vocational expert reviewed the Assessment.

The court is mindful of the directive in SSR 96-9p that "[a]ny significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." SSR 96-9p, 1996 WL 362208, at *34482 (July 2, 1996). However, the vocational expert testimony supports a finding that jobs remain even given limitations related to Claimant's right carpal tunnel syndrome.

In his reply, Claimant states that the ALJ "summarized the residual functional capacity assessment prepared by Ms. Lovin. He did note fine manipulation limitations with regard to the nondominant upper extremity. He did not note any limitations with the dominant hand. (Tr. 46)." (Pl.'s Reply at 3.) In fact, the ALJ posed three hypothetical questions. The first one, cited above and ultimately adopted by the ALJ as his residual functional capacity finding, did not include specific limitations in the right

14

hand. (Tr. at 46.) The second one included limitations from the first hypothetical question and added limitations from Ms. Lovin's Assessment, which Assessment included limitations in fine manipulation in both hands. (Tr. at 46.) The final hypothetical included an inability to sit, stand or walk in any combination totaling eight hours per day. (Tr. at 47.) The vocational expert identified jobs in response to the first two hypothetical questions. Although the ALJ may not have ultimately adopted a residual functional capacity finding that included limitations related to fine manipulation on the right side, even when such limitations were included in a hypothetical question, i.e., in the hypothetical that included Ms. Lovin's Assessment, jobs remained that Claimant could perform.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings

and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

    October 14, 2010
          Date

Mary E. Stanley
United States Magistrate Judge

16